## SAM DAVIS V. STATE OF NEBRASKA.

FILED MARCH 17, 1898.　No. 9827.

1. **Larceny by Bailee.** In a prosecution for the statutory crime of larceny by a bailee the gravamen of the charge is the felonious conversion, and the intent may be shown to have been entertained as of the time of the reception of the possession of the property or to have arisen during the continuance of such possession.

2. **Criminal Law: BURDEN OF PROOF.** The burden of proof in a crim-

inal action does not shift to the defendant but rests with and on the state.

3. ———: INSTRUCTIONS. A portion of a statement contained in an instruction criticised, but the entire instruction *held* not open to the objection urged against it.

4. ———: EVIDENCE. In the trial of a criminal cause the general rule operates the exclusion of evidence of the commitment by the accused of a crime or crimes separate and distinct from that on a charge of which he is being tried. To this rule there are exceptions, but in the case at bar reasons did not exist for the departure from the general doctrine.

ERROR to the district court for Otoe county. Tried below before RAMSEY, J. *Reversed.*

*Warren & Jackson,* for plaintiff in error.

*C. J. Smyth, Attorney General,* and *Ed P. Smith, Deputy Attorney General,* for the state.

HARRISON, C. J.

On May 17, 1897, an information was filed in the district court of Otoe county in which the plaintiff in error was charged with the crime of larceny as bailee, the property said to have been appropriated being one bay gelding, a buggy, and set of harness. To the charge on arraignment he pleaded not guilty, was placed on trial, convicted, and subsequently sentenced to confinement in the penitentiary for a term of three years. A reversal of the judgment is sought in an error proceeding to this court.

It was developed in evidence herein that on or about April 29, 1897, the plaintiff in error arrived in Nebraska City and announced to parties whom he met and with whom he conversed that he "was advance agent" for Ringling Bros., who were conducting a circus; also that the circus would appear and give an exhibition or performance in Nebraska City of date May 29, 1897. The plaintiff in error claimed to be in Nebraska City at the time we have indicated for the purpose of perfecting arrangements for the appearance of the circus there at the

later date stated by him, and partially to make contracts for certain articles and supplies which would be necessary for use by the circus company, its employés, etc., when in the city.    He made contracts with different parties, and on April 30, near noon, secured from a firm, then and there running a livery stable, the horse, buggy, and harness, which it was alleged he subsequently converted to his own use with a felonious intent.    At the time he obtained the horse and buggy he stated that he wanted to drive around town, would be out about an hour, and then return to the barn with the "rig."    Instead of doing as he stated, he drove to Shenandoah, Iowa, where he placed the property in charge of a livery stable keeper to be cared for, etc.    The owner of the horse and buggy became uneasy when the plaintiff in error did not return to the barn as promised, and in the afternoon, at 2 or 3 o'clock, reported the matter to the officers.    The sheriff sent telegrams to several towns, one of which was Shenandoah, asking for information in regard to plaintiff in error and the property.    To the queries sent to Shenandoah the sheriff received an answer which conveyed to him knowledge of the objects of his search.    The arrest of the plaintiff in error was ordered and effected, and later he was by the sheriff brought back to Nebraska and a prosecution for the alleged crime instituted, with the result we have hereinbefore stated.

It is of the argument that the trial court erred, in that it instructed the jury, before which the issues were tried, so as to allow a conviction on evidence of a conversion of the property on an intent to commit such act formed by plaintiff in error subsequent to the time he obtained possession of it; and in this connection it is urged that if he did not at the time of taking possession have the intent to feloniously appropriate it to his own use, he could not be convicted of the crime charged.    This contention is untenable.    In the case of *Ford v. State*, opinion written by Norval, C. J., reported in 46 Neb. 390, the defendant was charged with larceny as bailee, as was the plaintiff in

error in the case at bar, and the same argument was made in that case in this court in regard to an instruction given as is made in this case. It was then said: "In a prosecution for larceny as bailee, an instruction which fails to charge that the original taking of the property must be felonious is not for that reason erroneous. The gist of the offense in such a prosecution is the conversion of the property without the knowledge and consent of the owner thereof with the intent to steal the same. It is argued that this instruction is fatally defective, in that it omitted the element of 'felonious taking,' and *Mead v. State*, 25 Neb. 444, and *Barnes v. State*, 40 Neb. 545, are cited to support the proposition. Those cases are clearly distinguishable from the one at bar. They were prosecutions for simple larceny, while this is for larceny as bailee. In the decisions referred to the original taking must have been felonious in order to constitute the offense charged, while such is not the case in a prosecution like this. Here the gist of the offense is not the felonious taking of the rig, but the conversion thereof by Ford without the knowledge and consent of the owner, with the intent to steal it. The statute under which the information in this case was filed, section 121b of the Criminal Code, declares: 'That if any bailee of any money, bank bill, or note, goods, or chattels shall convert the same to his or her own use, with an intent to steal the same, he shall be deemed guilty of larceny, in the same manner as if the original taking had been felonious.' The instruction includes every element of the offense described in the statute." The doctrine announced in that case is applicable to and decisive of the question herein raised, and it follows that the argument presented is unavailing.

Objection is urged against the eleventh paragraph of the instructions, which was as follows: "You are instructed that one of the defenses interposed by defendant in this case is that at the time he procured the property in question from Levi Bros. he was under the influence of intoxicating liquors; that he was incapable of forming

an intent to steal, and for that reason claims he is not guilty.   Drunkenness, in law, is no excuse for the commission of crime.   If the state has proved, beyond a reasonable doubt, that defendant, at and within the county of Otoe and state of Nebraska, at or about the time alleged in the information, temporarily obtained the property in question from Levi Bros., and while in possession thereof, and while in Otoe county, Nebraska, unlawfully and feloniously converted said property to his own use without the consent of said Levi Bros., with intent, feloniously, to.permanently appropriate the same to his own use, then the burden would rest upon the defendant to satisfy you by evidence that he was so under the influence of liquor at the time that he was mentally unable to form an intent in his mind to steal said property or raise a reasonable doubt in your minds, after carefully weighing all the testimony in the case, whether he is guilty because of such intoxication at the time as not to be able to form an intent to steal.   You are to determine this matter from all the evidence before you."   It is insisted that the burden of proof never shifts in a criminal cause, but remains with and on the state; and that the paragraph of instructions quoted is objectionable, in that it casts the *onus* of proof relative to the plea of drunkenness on the plaintiff in error.   It has been stated by this court: "In criminal prosecutions the burden of proof never shifts, but, as to all defenses which the evidence tends to establish, rests upon the state throughout; hence a conviction can be had only when the jury are satisfied, from a consideration of all the evidence, of the defendant's guilt beyond a reasonable doubt.   That rule applies not alone to the case as made by the state, but to any distinct, substantive defense which may be interposed by the accused to justify or excuse the act charged."   (*Gravely v. State*, 38 Neb. 871. See also *Casey v. State*, 49 Neb. 403; *Beck v. State*, 51 Neb. 106; *Peyton v. State*, 54 Neb. 188.)   But the portion of the charge under consideration is almost word for word the same as a part of the instructions given in *Ford v.*

*State, supra,* with no material differences, and in that case the same objections were urged against it as are insisted upon in the present case. In that case it was determined that it was not wholly open to the attempted criticism, and that it did not have the effect of casting the burden of proof as to the plea interposed for defendant upon him, but it was also said in the opinion, in substance, that the idea to be conveyed might have been more concisely and clearly expressed. We think that, to be entirely consistent with the doctrine of this court relative to the burden of proof and to give clear expression to the rule of law applicable, there should have been omitted from the instruction the statement "then the burden of proof would rest upon the defendant to satisfy you by evidence," or the paragraph so framed as to avoid its use. It is not alone from a consideration of the evidence adduced on behalf of the accused that the jury is to draw its conclusions on such a question, but if a reasonable doubt arises in regard thereto from a consideration of all the evidence in the cause, then the defendant is entitled to an acquittal. (*Casey v. State, supra.*) But the objection urged against the instruction is not of force to disturb the judgment. (*Ford v. State, supra.*)

One assignment of error relates to the admission of a portion of the testimony of a witness, William Lieboldt, a member of a firm then conducting a bakery in Nebraska City. The plaintiff in error made a contract with the firm, the transaction being with the witness acting in behalf of the firm, to furnish to the circus company, when it visited Nebraska City, bread as stipulated in the contract. It is strenuously contended that the testimony, the admission of which is the subject of complaint in this assignment, was an effort to prove the commission by plaintiff in error of a separate and distinct crime from that charged in the complaint and its allowance was an error. The testimony on this subject is as follows:

Q. Did Mr. Davis get any money from you that day?

Defendant objects to that, as immaterial. Objection overruled. Exception.

Mr. Jessen: This testimony is offered for the purpose of showing the object of the defendant in leaving Nebraska City with the horse, with which he is charged with the theft, and not for the purpose of proving in any way the commission of the crime with which he is charged, but of his intention of converting the horse to his own use.

Defendant objects, as immaterial, irrelevant, and incompetent. Objection overruled. Testimony admitted for the purposes offered by the state. Exception.

Q. State to the jury under what circumstances it was obtained.

A. After he gave us that contract he asked me if I would loan him $5 until about 2 o'clock, that he expected some money at the Merchants Bank, and I told him I would. I gave him a check that I had there, and he told me that I had better go with him to the bank so that he could get the money, which I did.

Q. Did he get the money?

A. Yes, sir.

Q. What day was that?

A. Friday, April 30, about ten minutes to 12 o'clock.

Q. Did you see anything more of Mr. Davis?

A. I left him about 12 o'clock. He says I am going to get a horse and buggy, and he would be back by half past 1 or 2 o'clock and pay me the $5.

Q. Did he come back?

A. No, sir.

Q. Did he pay you the $5?

A. No, sir.     *     *     *

Q. Was this $5 that you advanced to him, was that—how did that come about?

A. I just gave it to him out of my own pocket. It had nothing to do with the firm.

Q. But he wouldn't have got the $5 if you hadn't got the contract?

A. No, sir.

Under the operation of the general rule in relation to admissibility, the testimony to which we have just re-

ferred would have been excluded; but the general doctrine has been varied, or there has been a departure therefrom, to a greater or lesser degree in cases of a particular or peculiar nature in some, if not all, jurisdictions. In some courts and in some cases the departure has been quite marked in extent and degree, while in others there has been exhibited a decided hesitancy to indulge in a modification of the general rule. Of the latter is this court. In.the case of *Smith v. State*, 17 Neb. 358, the accused was on trial charged with the crime of larceny of some jewelry, and there was admitted a record which disclosed his prior conviction of a distinct and independent larceny of jewelry. It was held therein, on error to this court, that the evidence should not have been admitted. In the case of *Cowan v. State*, 22 Neb. 519, the charge was for obtaining money under false pretenses, and during a trial the state was permitted to show that in two instances, entirely separate from and unconnected with the matter on trial, the defendant had obtained goods under false pretenses. In an opinion written by MAXWELL, C. J., it was held that such evidence was inadmissible and should have been excluded. (See also *Berghoff v. State*, 25 Neb. 213, wherein the general rule was adhered to and enforced.) In *Palin v. State*, 38 Neb. 862, in an opinion written by NORVAL, C. J., the general rule was quoted with approval. (See Greenleaf, Evidence sec. 53; *People v. Gibbs*, 93 N. Y. 471.) There were no forcible reasons in the case at bar for a departure or exception from the general rule. The testimony was objectionable, inadmissible, should have been excluded, and its reception was calculated to prejudice the rights of plaintiff in error.

The judgment must be reversed and the cause remanded.

REVERSED AND REMANDED.