### STATE OF NEBRASKA v. JOHN H. SPARKS.[*]

FILED JULY 12, 1907.    No. 15,136.

1. **Criminal Law**: FALSE PRETENSES: EVIDENCE. In prosecutions for obtaining money or property under false pretenses, the facts, when clearly proved, usually speak for themselves, and other proof of guilty knowledge and intent is not required.

2. ———: ———: ———. In such cases evidence that the accused at other times and places, by acts independent of and not connected with the transaction complained of, has committed like offenses, should not be received to aid in establishing his guilt.

3. ———: ———: ———. When, however, the transaction on which the prosecution is based is of such a character as to require other or further proof, cn the part of the prosecution, of the defendant's guilty knowledge and intent, evidence that he has committed like crimes in a similar manner, at or about the same time, or as a part of the same general scheme to defraud, may be received for that purpose.

ERROR to the district court for Gage county: WILLIAM H. KELLIGAR, JUDGE. *Exceptions sustained.*

*M. W. Terry, L. M. Pemberton* and *S. D. Killen,* for plaintiff in error.

*Fulton Jack, contra.*

BARNES, J.

This case is before us on the state's exceptions taken and prosecuted under the provisions of sections 483, 515 and 516 of the criminal code. It appears that the defendant, John H. Sparks, was tried in the district court for Gage county on an information charging him with obtaining a warrant from said county of the value of $539.04, by means of certain false pretenses. The substance of the information was that the defendant, on the 14th day of July, 1904, did falsely, knowingly and unlawfully pretend that he had built a certain bridge in said

[*] Rehearing denied. See opinion, p. 511, *post.*

county, and had a just and true claim against Gage county for the sum of $539.04 for building said bridge, which was due and wholly unpaid; that he made a charge and claim against said county for said sum for building said bridge, and, having duly verified it, filed it with the county clerk, and thereby pretended that he had built said bridge; that said sum was due and owing him therefor, and that he procured the county to issue him a warrant for said sum; that said representations were false; that he had not built a bridge as represented, which had not been paid for; that he did not have a just and true claim against said county for building said bridge, and that there was not due and owing him from said county for building said bridge said sum of $539.04, or any other sum. The jury found the defendant not guilty, and from the rulings of the trial court, excluding certain evidence offered by the prosecuting attorney, the exceptions herein are prosecuted.

The record discloses that the state introduced competent evidence which showed that on July 14, 1904, defendant filed claim No. 11,520 with the county clerk of Gage county for $539.04 for building a bridge between sections 31 and 32 in Island Grove township in said county; that said claim was allowed by the county board, and paid to the defendant by warrant No. 329. The evidence also shows that on December 3, 1903, claim No. 10,808 for $512.45 for building the same bridge at the same place was filed with the county board; that said claim was allowed and paid by warrant No. 129. It appears, however, by the state's evidence that the last mentioned claim was not in the handwriting of the defendant, but was made out and filed by one E. V. Martindale, who was employed in the defendant's office at St. Joseph, Missouri. The evidence further shows that the bridge in question was first built between sections 27 and 34, in said township, and was afterwards removed by the defendant, at the county's request, to its present location between sections 31 and 32; that on February 12, 1903, defendant

filed claim No. 9,931 against Gage county for $539.61 for building said bridge at its first location; that said claim was allowed by the county board for the sum of $523.84, and paid by warrant No. 108. It appears, however, that prior to the removal of the bridge from the place where it was first built to its present location the chairman of the board of county commissioners, acting for and on behalf of the county, entered into an agreement with the defendant, by which he was to build for said county a new steel bridge of 42 feet span between sections 27 and 34, in Island Grove township, as a substitute for the one in question, which was too small for that place. It also appears that it was believed the bridge fund was, or might be exhausted, or was insufficient to pay for the new bridge, and so it was agreed that the defendant should file a claim against the county for the difference between the value of the new 42 feet bridge and the one in question, and that the defendant should take the old bridge in payment for the remainder of the cost of constructing the new one. It was further agreed that he should remove the bridge which had thus been turned over to him to its present location, and after it was rebuilt and in proper condition for use upon the highway, and after the next tax levy, defendant should file his claim therefor, which the county would then pay.

The evidence further shows that Martindale, not being aware of the agreement of the defendant not to file the claim for the construction of the bridge in question until after the next tax levy, made out the bill known as claim No. 10,808 for $512.45 in his own handwriting; that he verified the same, signed the name of the defendant thereto, and filed it with the county board on December 3, 1903; that the claim was paid, and the proceeds thereof, with other items, were sent to St. Joseph, where the defendant had his principal office, and that the defendant was not advised that it was a payment for building the bridge in question at its present location. It further appears from the evidence that on July 14, 1904, and after the tax levy

for that year, the defendant. called the attention of one Austin, who was his foreman in Gage county, to the fact that no bill had been filed for removing and rebuilding the bridge in question. And thereupon the defendant ascertained the amount of said claim from Austin, and, being then at Beatrice, made out claim No. 11,520 for $539.04, and verified and filed it with the county board for payment, as shown by the state's evidence. Martindale testified positively that he in no manner, and at no time, informed the defendant that he had previously filed claim No. 10,808 for the construction of the bridge in question, and the defendant testified as positively that he had no knowledge that such claim had been presented when he filed the one made out and verified by him on the 14th day of July, 1904.

The defendant on his part introduced competent and convincing evidence, which showed that about the 18th day of June, 1906, supervisor Campbell of Gage county, wrote to the defendant that he thought the records showed that defendant had twice received pay for building the bridge in question; that defendant answered the letter at once, saying that he would come to Gage county, and they would look the matter up; that he did so, and it was then for the first time ascertained by the defendant that such was the fact; that defendant thereafter went before the county board and asked to be allowed to refund the sum of $539.04, with interest thereon at the rate of 7 per cent. per annum. His request was granted, and the money was thereupon refunded. The record further shows that, when the prosecuting attorney ascertained the fact, which was during the introduction of the state's evidence in chief, that the defendant had not made out and filed claim No. 10,808, he sought to show the knowledge and intent of the defendant, and his guilt of the particular crime charged in the information, by offering to prove that the defendant had at other times, and in other cases, filed claims against the county for building and repairing bridges, which had been allowed and paid in the same

manner as the claim in question; that said bridges had not been built, and the repairing had not been done. The testimony so offered was excluded. The state excepted, and these are the exceptions which are now before us for consideration.

It is strenuously urged by the state that the district court erred in refusing to receive the testimony in question; while counsel appointed to defend the rulings of the trial court invoke the general rule that the state cannot prove against a defendant any crime not alleged in the information, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged. As was said in *People v. Molineux*, 168 N. Y. 264. "This rule, so universally recognized and so firmly established in all English-speaking lands, is rooted in that jealous regard for the liberty of the individual which has distinguished our jurisprudence from all others, at least from the birth of Magna Charta. It is the product of that same humane and enlightened public spirit which, speaking through our common law, has decreed that every person charged with the commission of a crime shall be protected by the presumption of innocence until he has been proven guilty beyond a reasonable doubt. This rule, and the reasons upon which it rests, are so familiar to every student of our law that they need be referred to for no other purpose than to point out the exceptions thereto."

It is further urged by the defendant that this court is committed to the rule that evidence of the kind in question will not, under any circumstances, be received against a defendant on trial for the crime of obtaining money under false pretenses. While there are several cases decided by this court in which it has been held that such evidence should have been excluded in prosecutions of this kind, yet it seems to us that the ordinary or usual exceptions to this general rule are recognized in all of them. In *Cowan v. State*, 22 Neb. 519, it was held: "Except in cases where it is necessary to show guilty knowledge, it is not admissible to prove that at another time and place the

accused committed or attempted to commit a crime simi-
lar to that with which he stands charged." While the
evidence there offered was held to have been improperly
received, still the above excerpt shows that the court
clearly recognized an exception to the general rule. *Berg-
hoff v. State,* 25 Neb. 213, was a case where the defendant
was prosecuted for obtaining goods and merchandise under
false pretenses from Kirkendall, Jones & Company of
Omaha. On the trial, one E. A. Houghton was permitted
to testify that his business was that of wholesale dry goods
and notions; that he knew the defendant, who, on one
occasion, by means of false pretenses, which were described
and set forth in detail, obtained goods and merchandise
from him of the value of about $1,500. It was held that
the trial court erred in admitting the evidence. It was
said: "Except in cases where it is necessary to show guilty
knowledge, it is not admissible to prove that, at another
time and place, the accused committed, or attempted to
commit, a crime similar to that with which he stands
charged." So, while announcing the general rule in that
case, still it would seem that the court recognized the
exception. In *Davis v. State,* 54 Neb. 177, the defendant
was prosecuted on an information charging him with the
crime of larceny as bailee. On the trial, a witness was per-
mitted to testify that defendant was guilty of another
distinct and separate crime from that charged in the com-
plaint. The judgment of conviction was reversed because
of the admission of such testimony and it was said: "In
the trial of a criminal cause, the general rule operates
the exclusion of evidence of the commitment by the accused
of a crime or crimes separate and distinct from that for
which he is being tried. To this rule there are exceptions,
but in the case at bar reasons did not exist for the depart-
ure from the general doctrine." In the case of *Morgan v.
State,* 56 Neb. 696, the defendant was charged with obtain-
ing an indorsement of a certain draft by means of false
pretenses. The state was permitted to show that the
prisoner, a short time before, by like false representations,

obtained the indorsement of another person to a similar draft, and it was held that the evidence was not *res gestæ;* that it did not tend to prove the intent with which the prisoner made the false representations to the prosecuting witness, and its admission was reversible error. It was said in the opinion, however: "There are cases, such as prosecutions for receiving stolen goods, knowing them to be such, in which other acts of a like character are so connected with that which is the subject of the prosecution, either by some connection of time or place or as furnishing a clue to the motive on the part of the accused, as renders these similar acts competent evidence; but these cases rest upon the principle that the guilty knowledge of the accused is an essential ingredient of the offense. But the case on trial does not fall within that class of cases. The doctrine of this court is that, except in cases where it is necessary to show guilty knowledge, it is not admissible to prove that at another time and place the accused committed, or attempted to commit, a crime similar to that for which he is on trial."

So it will be seen by a careful examination of all of our decisions on this question, that we have always recognized certain well-known exceptions to the general rule contended for by the defendant. It is usually the case, however, that, in prosecutions for obtaining money or property under false pretenses the facts, when clearly proved, speak for themselves, and further proof of guilty knowledge or intent is unnecessary. In such case evidence that the accused at other times and places, and by acts independent of the transaction complained of, has committed like offenses is unnecessary, and should not be received to aid in establishing his guilt; but, where the facts are of such a nature that the prosecution is required to prove guilty knowledge and intent on the part of the accused in doing the act complained of by circumstantial evidence, proof of the commission of like crimes may be resorted to for that purpose.

This brings us to the question, does the case at bar fall

within such exception to the general rule? An examination of the record discloses that the offers of proof tended to establish a series of criminal transactions of a similar nature to the one for which the defendant was on trial, and might have assisted the jury in determining the good or bad faith of the transaction as shown by the defendant's witnesses. In *People v. Seaman,* 107 Mich. 348, 61 Am. St. Rep. 326, it was said: "Where it is necessary to show a particular intent in order to establish the offense charged, proof of previous acts of the same kind is admissible for the purpose of proving guilty knowledge or intent, or, where it is claimed that the thing done was the result of an accident, proof of other like occurrences under like conditions has been held admissible."

It would seem that under the rule above stated the offers of proof in this case should have been received because they are evidently within the exception to the general rule; and the state's exceptions are therefore

SUSTAINED.

The following opinion on motion for rehearing was filed January 8, 1908. *Rehearing denied:*

Criminal Law: FALSE PRETENSES: EVIDENCE. When in a prosecution for obtaining money by false pretenses it is shown that defendant, after having been paid for work done for a county, filed a second claim for the same services and again received the money thereon, and his defense is that he received the second payment by mistake, not knowing that his claim had been paid in full, it is competent to prove that at about the same time he obtained double payment of similar claims in the same manner, without affirmative proof that in such other cases he knew at the time of receiving such second payment that the claim on which he received it had already been paid in full.

SEDGWICK, C. J.

The defendant upon his motion for rehearing in this case has furnished us with an interesting brief. He insists that all of the authorities upon the point determined in the opinion apply the principle that other similar transac-

tions occurring at about the same time may be shown as evidence of guilty knowledge in trials for obtaining money upon false pretenses, only in cases where the defendant is shown to have had such knowledge in the transactions offered in evidence, or else is shown to have engaged in an unlawful occupation, of which defrauding was the principal part. It will be observed that in this case the defendant was conducting a large business in different states, and that the first claim presented and allowed by the county board was not presented by him personally, and that he insisted that in receiving the second payment for this particular work he had no knowledge that he had previously been paid. This seems to be the principal issue in this case. The guilt or innocence of the defendant depends upon the question thus presented. If he knew that he had already been paid for this work, and intended to obtain a second payment to which he was not entitled, he is evidently guilty as charged. But if he was not aware that his agent had presented such claim, and presented his claim in good faith, believing himself entitled to the money, he is, of course, not guilty. The evidence offered and excluded by the trial court was that in at least four other instances, at about the same time, he presented a second claim for similar work, and received payment therefor from the county. The complaint presented in the brief is that it was not offered to show that in any of these transactions he had knowledge that the claim that he so presented had already been paid, and it is ingeniously argued that to show other innocent transactions does not tend to show guilty knowledge in the one being investigated.

We think, however, that the better rule is that the fact that the claim had already been paid and that the defendant had received the benefit of such payment furnishes some evidence that he knew of the prior payment; and, as was said in an old English case, quoted with approval by the supreme court of Michigan, in *People v. Hoffmann,* 142 Mich. 531: "It seems clear upon principle that when

the fact of the prisoner having done the thing charged is proved, and the only remaining question is whether at the time he did it he had guilty knowledge of the quality of his act or acted under a mistake, evidence of the class received must be admissible. It tends to show that he was pursuing a course of similar acts, and thereby it raises a presumption that he was not acting under a mistake. It is not conclusive, for a man may be many times under a similar mistake, or may be many times the dupe of another; but it is less likely he should be so often than once, and every circumstance which shows he was not under a mistake on any of these occasions strengthens the presumption that he was not on the last, and this is amply borne out by authority." Of course such evidence is to be received with caution. The defendant had a number of men in his employ. He transacted a considerable business at different places and in different states. The transaction in this case was somewhat complicated, and while the evidence in question should have been admitted, and the whole matter submitted to the consideration of the jury, still, unless upon the whole evidence it was proved beyond a reasonable doubt that the defendant in this particular case knew that the claim had already been paid when he demanded and received the second payment from the county, he could not be convicted.

　　Motion for rehearing is

OVERRULED.