## ARTHUR A. FOREMAN v. STATE OF NEBRASKA.

FILED FEBRUARY 25, 1932.   No. 27857.

' *Leonard A. Flansburg, O'Sullivan & Southard* and *Cook & Cook,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *F. S. Howell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

Arthur A. Foreman, the defendant, at all times material to the facts here involved, namely, from June 11, 1927, until October 7, 1929, was the president and a director of the Farmers State Bank of Overton. December 10, 1930, the defendant was informed against in the dis-

trict court for Dawson county and there charged with having made certain false entries and deceptive statements in respect of the record books of the Overton bank, with the unlawful intent then and there and thereby to deceive the secretary of the department of trade and commerce in respect of the true financial condition of the bank.

Upon submission, the jury returned a verdict finding the defendant guilty as charged in the information in respect of counts numbered 9, 13, and 14 thereof, and not guilty as to counts numbered 1, 2, 3, 4, and 5 thereof. And as to counts numbered 6, 7, 8, 10, 11, and 12 of the information, the jury reported they were unable to agree. Thereupon the court, pursuant to the verdict, sentenced the defendant to serve a term of from two to four years on each of the counts numbered 9, 13, and 14, the sentences to run consecutively. From the judgment so rendered, the defendant prosecutes error.

A plea in abatement was filed by the defendant wherein it is alleged that the trial judge was without jurisdiction in the premises on the ground that the original complaint was not verified upon oath of the county attorney. The court overruled the plea in abatement and also the defendant's demurrer. We do not find error in the court's ruling in the premises. The information was verified in the following language by the county attorney: "T. M. Hewitt, being duly sworn according to law, says the facts stated in his foregoing information are true as he verily believes." The information was sworn to before the clerk of the district court and, under the law, we think such information, verified as it was on the information and belief of the county attorney, was sufficient. We have held: "The sufficiency of an oath to a complaint or information is not fixed by our state Constitution, but is a matter of legislative and judicial determination." *Watson v. State*, 109 Neb. 43. This statement also appears in the *Watson* case: "In some jurisdictions, notably the federal districts represented by the courts cited, *supra*, it has been held that an oath upon information and belief is not an oath, and that a complaint

or information verified upon information and belief is void. This court is committed to a different rule." And in *Sharp v. State,* 61 Neb. 187, we held: "It is sufficient if an information is verified by the county attorney, on information and belief." See, also, *Washburn v. People,* 10 Mich. 372. We conclude that the requirement in the matter of the verification upon oath of the county attorney sufficiently complies with the law of this state.

In March, 1929, the affairs of the Overton bank were examined by J. Y. Castle, a bank examiner. He testified that the directors, pursuant to his advice, voted to assess the capital stock at 100 per cent. in order to avoid closing the bank. A copy of the minutes of the meeting was forwarded to the state banking department and it is therein stated that an assessment had been previously made of the 172 shares of stock jointly owned by the directors. A duplicate deposit slip was also forwarded to the department and, in a letter by Foreman, the report of the bank examiner stating that an assessment had been made on the capital stock was confirmed. It appears, however, that a later inventory of the books of the bank by Castle disclosed that a record of the assessment had never been entered therein. Under the law, state banks are required to have a legal reserve of 15 per cent. of their deposits on hand. It appears that the South Omaha State Bank, at the time, was a correspondent of the Overton bank and the defendant's brother-in-law was then the president of the Omaha bank.

Under count 9 of the information, the defendant is charged with having made a false report to the banking department at Lincoln wherein he stated that the Omaha bank owed the Overton bank $27,798.69, whereas only $17,798.69, and no more, was the amount owing to the Overton bank. The defendant testified that he sent a note to the Omaha bank for $10,000, but that the president of that bank returned the note unused for the reason, as stated in a letter to the defendant, that the liability ledger of the Omaha bank showed that the Overton bank already owed $26,000, and this was the loan limit. But it is un-

contradicted that the defendant, notwithstanding the refusal of credit, failed to charge off the amount of $10,000 from his books. The Omaha bank at the end of the month sent a copy of its ledger sheet to the Overton bank, but no mention is made therein of the $10,000 item.

From the evidence of several of the bank's former employees it appears that certain erasures and changes were made in the figures of the bank books from time to time under the direction of the defendant. But, in respect of such alterations, the defendant testified that they were merely "corrections" of certain mistakes in entries.

The defendant admits that the reserve of the bank would have been much lower had the $10,000 item been omitted from the report that was forwarded to the banking department. And he admitted that the bank's reserve was then lower than the 15 per cent. required under the law. The defendant also made it plainly appear that he was aware of the fact that the department officials would infer from his report that the Overton bank's reserve was higher than the fact would warrant. And yet, notwithstanding the fact that the defendant received the letter from the Omaha bank refusing any further credit, he made no effort to make a clear statement to the banking department in respect of the actual then present condition of the bank. The evidence shows that, when previous reports were due from the bank to the banking department, the defendant borrowed credit to build up the then current reserve of the bank. That the $10,000 was included by the defendant in his report with the wilful intent to deceive the banking department officials as to the true financial status of his bank clearly appears.

The defendant contends that it was through the instigation and under the direction of the bank examiner that the assessment and the subsequent report in respect thereof were made. We think this contention is without merit. From a review of the defendant's evidence it appears that he then knew that the bank would be closed unless its reserve was reported to be larger than was the fact. Nor

does it appear that the checks were made out, and the duplicate deposit tickets made out and a letter written merely because the examiner so directed. The defendant admitted that he did it to have his bank remain open for business. And, as stated in *Morse v. United States,* 174 Fed. 539: "A bank officer who wilfully misapplies the funds of the bank, or who makes or causes to be made a false entry in its books, knowing it to be false, cannot be heard to say that he did the act innocently."

Complaint is made in the admission of certain evidence relating to other reports by the defendant to the banking department. The evidence was received, however, only to show the disposition of the defendant in former transactions and, where such evidence was admitted for the purpose of proving intent, the court did not err in refusing to exclude it. *Clark v. State,* 79 Neb. 473; *State v. Sparks,* 79 Neb. 504; *Chamberlain v. State,* 80 Neb. 812.

Defendant also complains of the giving of instruction numbered 9 in that it is alleged that the court there placed unnecessary emphasis on evidence that was directed against the defendant. That part of the instruction above referred to follows:

"You are doubtless aware the state has not been able to produce a witness who testified as to what the defendant's intent was when he made or caused to be made book entries or statements as set forth in the counts of the information, except the testimony of William Nagel as to the ten thousand dollars credit on the books of the Farmers State Bank of Overton, Nebraska, as alleged in counts 9, 11, and 12 of the information."

It does not appear that the instruction complained of in any manner even tends to prejudice the jury against the defendant. The evidence of the defendant himself clearly concedes the fact that he knowingly, wilfully, and of his own volition made the report to the state banking department with the intent to thereby deceive the officials thereof. It is elementary that, when complaint is made of one instruction given by the court to the jury, the ver-

624

dict and judgment thereon will not be reversed when the instructions, considered in their entirety and as a whole, are not prejudicial to the lawful rights of the defendant.

The defendant has urged other assignments of alleged error which we have examined and considered. But we find none of them prejudicial to the defendant.

The judgment is right and it is therefore

AFFIRMED.