ARTHUR A. FOREMAN V. STATE OF NEBRASKA.

FILED APRIL 10, 1934. No. 28851.

*Flansburg, Lee & Sheldahl* and *Cook & Cook,* for plaintiff in error.

*Paul F. Good, Attorney General,* and *R. H. Beatty,* contra.

Heard before Goss, C. J., Rose, Good, Eberly, Day and Paine, JJ.

Good, J.

Arthur A. Foreman, president of the Farmers State Bank of Overton, was convicted on counts 9, 13 and 14 of an information, each of which counts charged that, as an officer of the bank, he had made false reports as to the bank's financial condition, with intent to deceive the secretary of trade and commerce and any other person, authorized by law to examine into the affairs of the banking corporation. He brings to this court for review the record of his conviction.

For convenience, Mr. Foreman will be referred to as defendant, and the bank, of which he was president, will be referred to as the Overton bank.

Count 9 charged defendant with having wilfully and knowingly subscribed to and verified a report showing the condition of the financial affairs of said bank at the close of business on July 1, 1929, in which statement he listed as due from the South Omaha State Bank to the Overton bank $27,798.69, when, in fact, there was only due the Overton bank from the South Omaha bank the sum of $17,798.69. Defendant admits that the report to the banking department, described in count 9, was made by him and was incorrect and untrue, but asserts that at the time he signed the report he, in good faith, believed it true and correct, and therefore there was no intent to deceive.

The South Omaha State Bank was and had been for years a depository of the Overton bank, and on many occasions, when the latter bank was in need of funds to increase its reserve, defendant would send his personal note, payable to the South Omaha State Bank, and ask and receive credit in that bank for the amount, which was placed to the credit of the Overton bank, and for which defendant would take credit in his personal account in the Overton bank, thus increasing the liability of the

Overton bank but at the same time increasing its cash reserve.

Defendant claims that about June 29, 1929, he sent to the South Omaha State Bank and payable to it his personal promissory note in the sum of $10,000, and requested that bank to place the amount to the credit of the Overton bank; that at the time he signed the report he believed that such credit had been given the Overton bank; that, had this credit been granted, there would have been to the credit of the Overton bank in the South Omaha State Bank $27,798.69; that he signed the report on the 3d day of July, 1929, and not until July 5, 1929, did he learn that the South Omaha bank had declined to extend the requested credit. The evidence on behalf of the state, however, tends to prove a different state of facts. The blanks on which the call reports are made are sent out by the department of trade and commerce from the city of Lincoln, and the records in the banking department show, and an officer having in charge the sending out of these reports testified, that the blanks were not mailed from Lincoln until July 5 and could not, in the ordinary course of the mails, have reached Overton until July 6, and that the report was not verified before the notary public until the 9th day of July. There is also evidence on behalf of the state tending to some extent to prove that the 10,000-dollar note was not sent to the South Omaha bank.

In this state of the record, the question of intent is the crucial question, so far as count 9 is concerned. If defendant's version of the facts is true, there was no intent to deceive the banking department, or any one else, in making out the report. If the facts are as contended for by the state, then there was an intent to deceive.

Defendant on the witness-stand testified that he made the report without any intent to deceive and believing it to be true when made. He contends that the court did not properly instruct upon the question of intent, and complains of the instruction given by the court and re-

fusal to give an instruction requested by defendant.

Instruction No. 7 reads as follows: "Intent is an essential element in this case, and must be established by the *evidence* the same as any other material element beyond a reasonable doubt.

"You are instructed that the intent to commit the act alleged is one of the essential elements of the crime charged. The intent, however, with which an act is done is a mental process and as such is generally hidden within the mind where it is conceived and is rarely, if ever, susceptible of proof by direct evidence, but must be inferred by the words or acts of the party entertaining them, and the facts and circumstances surrounding and attendant upon the act charged to be committed." (Italics ours.)

Defendant contends that this instruction eliminated from the jury's consideration the testimony of defendant with reference to the intent with which he made the report. By another instruction the jury were informed that the law presumes defendant innocent and such presumption partakes of the nature of evidence and continues throughout the trial until defendant has been proved guilty beyond a reasonable doubt. Another instruction stated the material allegations of the offense charged. With reference to count 9 the court further instructed the jury: "Should you find *from all of the evidence* in this case that the state has established, beyond a reasonable doubt, each and every one of the foregoing propositions, it will then be your duty to convict said defendant of the crime as charged in count number nine of the information. But if you find that the state has failed to establish count number nine of the information, as above set forth, beyond a reasonable doubt, then your verdict should be for the defendant on said count." Another instruction which the court gave is as follows: "The jury are further instructed that the intent constitutes the felonious act and this intent is to be gathered from the circumstances; not from one, but from all, and the circumstances, when taken together, must be of so

conclusive nature as to establish the 'intent' beyond a reasonable doubt; and all the facts and circumstances taken together must be inconsistent with the defendant's innocence before you can find the defendant guilty as to count nine." (Italics ours.) By another instruction the court told the jury that when weighing the evidence they should take into consideration the interest or lack of interest of the witnesses, if any such appears, the reasonableness or unreasonableness of the story told by them, and all the evidence, facts and circumstances proved.

From a consideration of all these instructions and the entire charge given, we are constrained to believe that defendant was not prejudiced by the instruction complained of. Had the instruction said that the intent "may," instead of "must," be inferred, there would be no question; but, after all, it was the criminal intent to which reference was being made in the instruction, and practically all the evidence as to criminal intent was the facts and circumstances. An instruction, though technically erroneous, is not ground for reversal unless prejudicial to the complaining party, and the rule also is that the instructions should be considered as a whole to determine whether there was prejudicial error in their giving. The requested instruction was subject to criticism as pointing out and emphasizing particular testimony.

During the course of the trial evidence was offered by the state tending to prove that on three previous occasions, at about the time call reports were expected, defendant, for the purpose of deceiving the banking department as to the amount of cash reserve carried by the bank, entered upon the bank's books a deposit, as made by defendant, and a credit taken at the South Omaha State Bank for sums of money ranging from $10,000 to $30,000, and that these reports were false in that the notes, claimed by defendant to have been sent to the South Omaha State Bank, were not sent, and the book entries were only a sham to make a showing. Defendant contends that in each instance he had sent a note to the

South Omaha State Bank for the amount for which he had taken credit on the books of the Overton bank, and that the amount shown by the report was, in fact, in the account of the Overton bank in South Omaha. There was evidence of alteration of the books of the Overton bank, indicating that changes had been made to show a deposit to defendant's account, and to show a credit of the Overton bank in the South Omaha State Bank on these occasions; and there was evidence on behalf of the state which would indicate that these credits were fictitious and that the reports, showing the credits in the South Omaha bank, were false. It is true that the evidence on behalf of defendant tends to show that each of the transactions was *bona fide* and that the changes in the books of the Overton bank were made only for the purpose of having them reflect the true state of facts. Defendant contends that the admission of evidence of other alleged offenses was prejudicial. It was plainly stated by the prosecution at the time objection was made that the evidence was offered only for the purpose of proving criminal intent, and the court admitted it only for that purpose, and in the instructions to the jury directed that they could consider that evidence only for the purpose of determining with what intent the report, described in count 9, was made.

Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to show a particular criminal intent, which is necessary to constitute the crime charged. Any fact which proves or tends to prove the particular intent is competent, although it may tend to prove an independent crime. This rule, in effect, has been recognized by this court in many cases. *Clark v. State,* 79 Neb. 473; *State v. Sparks,* 79 Neb. 504; *Chamberlain v. State,* 80 Neb. 812; *Cohoe v. State,* 82 Neb. 744; *Clark v. State,* 102 Neb. 728; *St. Clair v. State,* 103 Neb. 125; *Murray v. State,* 119 Neb. 16; *Rice v. State,* 120 Neb. 641; 16 C. J. 589. Also, the question as to whether such other alleged offenses are too remote, in point of time,

rests largely in the discretion of the trial court. 16 C. J. 594.

There are other assignments of error, relating to the admission of evidence, which have been examined, but no prejudicial error in respect thereto has been found.

Counts 13 and 14 each charged false reports and each related to the same transaction. Count 13 charged that a deposit slip, showing a deposit by stockholders of the Overton bank to the credit of "stockholders' account" in that bank of $17,200, a duplicate of which was sent to the department of trade and commerce, was false and that no such deposit was made. Count 14 charged that a letter, containing the statement that this deposit had been made in the bank, was false. The deposit slip described in count 13 and the letter described in count 14 were written on the same day and as a part of the same transaction.

Without conflict the evidence shows that on the 20th of March, 1929, a bank examiner had examined the affairs of the Overton bank and found that it carried as assets bills receivable, aggregating a little more than $26,000, which the examiner deemed to be worthless. The examiner advised the officers of the bank that it would be necessary for them to at once make an assessment upon the stock of $100 per share, to restore the impaired capital of the bank, or that the bank would be closed. Thereupon, a stockholders' meeting was called and held in the bank building in the presence of the bank examiner, at which meeting an assessment of $100 per share on the stock was made. Pursuant to this assessment, defendant drew his check or checks, for $15,200, and another stockholder drew his check for $2,000. These checks were placed in the possession of defendant as president of the bank, and a deposit slip was made out, showing the deposit of three items, aggregating $17,200, to the credit of "stockholders' account" in the Overton bank.

It appears without dispute that defendant owned 202 shares of the stock in the bank, 142 shares being carried

in his own name, 10 shares in the name of the cashier, and 50 shares in the name of one Brown, and which was pledged as collateral for a loan from a bank in Kearney. Defendant's check, or checks, for $15,200 represented the assessment upon the stock, standing in his name and in the name of the cashier. It appears that the several checks were not charged on the books of the bank against the respective accounts of the drawers; nor were they credited on the books of the bank to "stockholders' account." The state contends that no deposit was, in fact, made and that therefore the reports were false. Defendant, on the other hand, contends that, when the checks, together with the deposit slip, were placed in the hands of the bank's president and a duplicate slip was issued and delivered to the bank examiner, to be transmitted to the department of trade and commerce, a deposit was then effected. The evidence further discloses that the checks in question, after the bank failed, could not be found; whether they were destroyed or abstracted from the bank is uncertain. If, in fact, a deposit was made, then the reports were not false, even though an offense may have been committed in afterwards destroying or abstracting the checks from the possession of the bank.

In *Taylor v. Dierks Lumber & Coal Co.*, 183 Ark. 937, on page 941 of the opinion, speaking of the transaction constituting a deposit, it was said: "The transaction was completed when the customer tendered the cash and checks to the bank for deposit, and the president of the bank received them without any restriction. When the president credited the customer's pass-book with the amount of the deposit, the title passed to the bank; and the items constituting the deposit were not again subject to the control of the customer."

In *Ricker v. Davis*, 160 Ia. 37, it was held: "Deposit slips of a bank and the pass-book of a depositor are admissible, in an action for overdrafts, to show that defendant had been given credit for all his deposits, although not covering all the transactions of the parties."

In *Wasson v. Lamb,* 120 Ind. 514, it was held:

"Where a deposit is made, the amount and date thereof being entered by the cashier or teller in the bank-book of the depositor, such entries, when made by the proper officer, bind the bank as admissions.

"If checks, drafts, or other evidence of debt are received in good faith as deposits, the bank crediting them as so much money, the title to the checks or drafts is immediately transferred to the bank, which becomes legally liable to the depositor as for so much money deposited."

Suppose, in the instant case, a customer of the bank had taken the identical checks, drawn by the defendant and the other stockholder, to the bank, made out a deposit slip and handed the checks and the deposit slip to the president of the bank, who then issued a duplicate deposit slip. No one would doubt that the customer had made a valid deposit and that title to the checks then passed to the bank. So, in the instant case, the checks, when delivered to the president of the bank, as such, and he made, initialed and issued a duplicate deposit slip, a deposit was thereby completed, and the title to the checks passed to the bank. In this case, it is true, the deposit was to be placed to the credit of stockholders' account, awaiting payment of the assessment by other stockholders, when the account was to be used to take out or charge off the bills receivable which the bank examiner had determined were worthless. The checks were deposited for a special purpose. It was the duty of the officers of the bank to enter a credit to stockholders' account and to charge the accounts of the respective drawers of the checks with the amount of their respective checks.

We are of the opinion that the undisputed evidence shows that a deposit was, in fact, made, and that the report that such deposit was made was not false, even though the checks may have been afterwards destroyed or stolen.

It follows that the conviction on counts 13 and 14 must

be reversed and the action as to those counts is dismissed. The judgment of the district court as to count 9 is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.

ROSE, J., dissenting.

Under court instructions open to criticism, the jury in the county in which the Overton bank failed found that defendant made a false report of the financial condition of the bank with the intention of deceiving officers of the banking department. The alleged false report was that the Overton bank had credit in the Omaha bank for $27,-798.69, whereas the correct amount was $17,798.69—a discrepancy of $10,000. To convict defendant the jury had to find beyond a reasonable doubt that he thus intended to deceive some one connected with the banking department. Affirmance of the conviction requires a decision that the evidence, according to rules of the criminal law, is sufficient to prove the criminal intent of defendant beyond a reasonable doubt. It is a fact that the Overton bank had in the Omaha bank credit for $17,-798.69. Defendant's explanation of the discrepancy is that he sent a 10,000-dollar note to the Omaha bank and gave the Overton bank credit therefor, assuming the note would be accepted and inserting in his report the sum of the two items, or $27,798.69. A letter from the Omaha bank to defendant as president of the Overton bank stated that the 10,000-dollar note was returned unaccepted. Defendant had many times obtained credit in the manner indicated and it was reasonable for him to assume the credit would be extended in this instance, his brother-in-law being president of the Omaha bank. Defendant admitted the error, but testified it was committed without any criminal intention. There was an explanation of dates consistent with innocence. Criminal intent essential to a conviction rests on doubtful inferences which do not seem to overcome the presumption of innocence, the positive evidence of innocence, and the reasonable explanation supported by circumstances and by direct and convincing

testimony. I am not convinced that the evidence is sufficient to prove the criminal intent of defendant beyond a reasonable doubt.