## CARL J. FRICKE V. STATE OF NEBRASKA.

### FILED DECEMBER 29, 1924.   No. 23956.

1. **Criminal Law: BUILDING AND LOAN ASSOCIATIONS: "FALSE ENTRY."** A "false entry" in the ledger of a building and loan association, punishable under section 8100, Comp. St. 1922. is one that is intentionally and knowingly false when made, and was made with the intent to deceive any person authorized to examine into the affairs of such association.

2. ———: ———: ———. In such a case, an entry, even though incorrect, if made to correct a mistake in bookkeeping and to make the account speak, or more nearly speak the truth, is not the character of false entry made criminal by the statute.

3. ———: ———: ———: INSTRUCTIONS. Where the evidence on the part of defendant tends to prove that the entries charged to be false were made merely in order to correct mistakes in bookkeeping and to make the "fully paid stock" account on the ledger more nearly state the true facts as to the liability of the association on said account, an instruction which states: "And if you find from the evidence of this case that the defendant wilfully made or caused to be made the false entries charged in the indictment or any one of them, knowing them to be false,

he cannot be heard to say that he made them innocently. Such an entry is calculated to deceive and the defendant who made it knowingly cannot avoid the presumption that such entry would have the effect of deceiving," is prejudicially erroneous.

4. ———: EVIDENCE OF OTHER CRIMES. As a general rule, evidence of other crimes than that with which the accused is charged is not admissible in a criminal prosecution.

ERROR to the district court for Cass county: ALEXANDER C. TROUP, JUDGE. *Reversed.*

*Halleck F. Rose, Arthur C. Pancoast* and *William A. Robertson,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before MORRISSEY, C. J., LETTON, DEAN, GOOD and THOMPSON, JJ.

PER CURIAM.

Carl J. Fricke, hereinafter named defendant, was convicted on seven distinct counts of the offense of making false entries on the books of account of the Livingston Loan & Building Association. From this conviction he prosecutes error.

The assignments of error are that each of the counts is not sustained by sufficient evidence and is contrary to law: error in the reception of evidence; error in the instuctions. and in the rulings of the court in regard to a plea in abatement. The assignments of error concerned with the rulings of the court upon a plea in abatement have already been decided adversely to the defendant's contention in *Quinton v. State, ante,* p. 684, and will not be further considered.

The first count of the information charges a false entry at page 338 of ledger No. 2 of the corporation, purporting to show that on June 16, 1921, the corporation paid A. Rys, a stockholder, $300 in payment of stock which Rys held in the corporation, which entry was false and made with in-

tent to deceive the officers and stockholders of the corporation and the officers and employees of the department of trade and commerce. The second count charged a like false entry to Rys of $900 on May 19, 1921. The third count, a similar entry purporting to show that the corporation paid to D. Sampson, a stockholder, $2,100; the fourth count, a false entry at page 338 of ledger No. 2, purporting to show that the corporation had paid out $9,850 "with like intent to stockholders in said corporation." Count five charges falsity of a like entry on the same page, on October 20, 1921, purporting to show that the corporation paid $3,370 to stockholders in the corporation. The sixth count charges that on November 17, 1921, on the same book and page, a false entry was made purporting to show that the corporation paid to stockholders in payment of shares of stock held by them, $5,250. The seventh count makes a like charge with respect to the payment of $394.07.

Section 8100, Comp. St. 1922, so far as material here, is as follows: "Every person who shall wilfully or knowingly subscribe, or make, or cause to be made, any false statement or any false entries in any book of any association organized for the purpose set forth in section 8084 of this article or exhibit any false paper with the intent to deceive any person authorized to examine into the affairs of such association, * * * shall be deemed guilty of a felony," etc.

The entries charged to have been falsely made with the intent to deceive were all made on page 338 of ledger No. 2, which is the " paid-up stock account." This is a general account kept to show the liability of the association upon outstanding fully paid stock. Fully paid stock represents money loaned to or deposited with the association. On the credit side of the ledger is shown the amount of money received by the association, and on the debit side the amount paid out to the holders of such stock on withdrawals. It is clearly shown by his method of keeping this account that defendant was incompetent and did not understand the principle upon which such account should be

kept. For instance, if $1,000 was deposited with the association, a fully paid stock certificate would be issued for that amount, and an entry made on the credit side showing that the holder of the certificate was entitled to credit in that amount. If the owner afterwards drew $400, an entry would be made debiting him to that extent. It was not the custom of defendant to indorse this as a credit upon the certificate already issued, but to take up this certificate and issue a new one for $600 as of the date of the original certificate. Defendant would then enter $600 on the credit side of the ledger. The actual liability of the association on the stock would be only $600, but the entries as made upon the books would show that the association owed both the $1,000 and the $600, less the $400 entered on the debit side, thus overstating the liability of the association $600. Apparently in the endeavor to correct such errors defendant would at various times make entries on the debit side of the ledger in order to balance the account. Most of such entries were made in the ledger without corresponding explanatory entries in the journal. In some the names of the certificate holders are stated, but not always correctly, and the amounts do not always correspond with the debits which should have been made.

There is little conflict in the evidence of the expert accountants who testified. Some of those testifying for the state denominate these entries "false entries," while Mr. Greenfield, the accountant who was called by and gave evidence for both the prosecution and the defense, testified that some are incorrect but not false; that is, that they were made to correct previous errors in the books which overstated the liability of the association, and were not calculated to deceive any one authorized to examine the affairs of the association. He also testified that he made an exhaustive examination of the fully paid stock account, especially in connection with the entries charged to have been falsely made; that in this ledger account he found that a renewal was charged as if the stockholder had received that much additional cash, when as a matter of

fact he did not receive any.  If the entries had been prop-
erly made in the first place, there would have been an
entry on both sides of the ledger, which would maintain
the account in its correct balance.  On discovery of the
error, it would have been perfectly proper for defendant
to make the entries to correct the account, and there was
no other way of correcting it except to make the missing
debits.  He also testified that the entries " to balance "
(without mentioning names) set forth in the latter
counts of the indictment were made as correction entries
because a number of entries had been made upon the books
giving credit for fully paid-up stock which was never paid
for, and which certificates were canceled.  The witness did
not clearly identify these particular certificates in con-
nection with any particular correction, but he does testi-
fy that corrections aggregating the amount of these en-
tries were necessary; that the credits and debits of the
accounts he had examined indicated a liability on the fully
paid stock account of $42,060.75, while the actual liability
was only $13,350, the excess liability being due to the
failure to make the proper debit entries; that these en-
tries would not operate as a cover for an abstraction of
money and could not have covered any money going to
Fricke personally.  He further testified, on cross-examina-
tion, that there was scarcely an account in the books that
was correct, and that there were numerous mistakes, many
of them made against defendant's interests.

Coming now to the assignments of error:  Early in the
trial objection was made to the introduction of testimony
as to the facts that the assets had been transferred to a
like association in Omaha, as to the present financial con-
dition of the association, and as to the basis upon which
its assets had been transferred, but the court permitted
evidence as to the transfer and as to the amount realized
for stock, on the statement of counsel for the state that
the purpose was to show a motive for the alleged false en-
tries.  On cross-examination the same witness testified
that she received $82.30 per $100 for her shares of stock,

and that the local association owned some mortgages that were being foreclosed, in which the stockholders had an interest. One of the accountants for the state testified that he, with another accountant, made an audit of the books at the request of the board of directors. This audit went back to 1913. The court admitted the result of this audit, over objection, as going to show a reason or motive for false entries. The witness also testified that he could not identify any shortage on account of paid-up stock. The witness was questioned as to what he observed as to keeping the record of loans on mortgaged property. This was objected to as not involving the items here in controversy, but the objection was overruled, and he was permitted to testify that mortgages were carried as assets of the association after they had been paid off, and that defendant kept two sets of books, a private set and the set belonging to the association, the private books consisting of small books of the nature of pass-books. On cross-examination he testified that they found numerous mistakes that defendant had made against himself, and that he charged himself with money that should not have been charged to him.

Defendant was charged with knowingly making certain specific false entries in a ledger " kept for the purpose of showing the financial condition of said corporation," with the intent to deceive the officers of the association and of the state. If these entries upon the ledger had the effect to cover up any shortage in the money received upon the paid-up stock account, and defendant's motive in making them was to conceal from the officers of the company or the examining officers of the state a deficiency in the paid-up stock account, then he would be guilty of the offense charged, provided the entries were sufficiently identified. But there is direct proof, not disputed, that there is no shortage in the paid-up stock account. The evidence which was received, implying that defendant had concealed, or abstracted, or embezzled money derived from collections upon mortgages, tends to prove another crime which it

was not shown had any relation to the crime with which he was charged, and should not have been admitted. *Berghoff v. State,* 25 Neb. 213; *In re McVey,* 50 Neb. 481; *Davis v. State,* 54 Neb. 177; 16 C. J. 586, sec. 1132.

The court gave the following among other instructions: " The court instructs the jury that the intent to deceive in the making of a false entry is an essential element of the offense or offenses charged, but the intent and motives which actuate men can be ascertained only by a consideration of their acts. And if you find from the evidence of this case that the defendant wilfully made or caused to be made the false entries charged in the indictment or **any** one of them, knowing them to be false, *he cannot be heard to say that he made* them innocently. Such an entry *is calculated to deceive* and the defendant who made it knowingly *cannot avoid the presumption* that such entry would have the effect of deceiving. Nor would the fact that the entry was not made in a skilful manner and could be easily detected constitute any defense." This instruction told the jury as a matter of law that, if defendant wilfully made the entries charged, he cannot be heard to say he made them innocently, that such an entry was " calculated to deceive," and that defendant " cannot avoid the presumption that such entry would have the effect of deceiving." The charge in the indictment is that the entry purports to show that the various sums paid to the stockholders named in the indictment were paid by the corporation to them respectively in payment and satisfaction of stock which the stockholders held. But the explanation is made that these entries were not made to show a payment by the corporation, but were made as correction entries to rectify an apparent overstatement of liabilities of the corporation to the stockholders. The main defect with respect to these entries is that their purpose was not fully explained on the journal or even on the ledger itself.

Even though correct as a legal proposition, an instruction not based upon the evidence may constitute reversible **error.** *Esterly Harvesting Machine Co. v. Frolkey,* 34 Neb.

110; *Boesen v. Omaha Street R. Co.,* 79 Neb. 381. Considering the nature of the testimony in this case, the giving of this instruction was erroneous. We are satisfied that the errors committed at the trial were prejudicial to defendant. We note also that no instruction was given upon the presumption of innocence.

REVERSED.

Note—See Building and Loan Associations, 9 C. J. sec. 19 (1926 Ann.) ; Criminal Law, 16 C. J. secs. 1132, 1133, 2486; 17 C. J. sec. 3690.