alleged act committed prior to January, 1923, was barred or not, nor to determine at this time whether or not the relation of surgeon and patient was continuous from the first employment in December, 1916, down to August 8, 1923. These questions are not raised by the record and to declare the law upon them now would be to utter *obiter dicta.*

We find no error upon the face of the record except that of the court in directing a verdict for the defendant.

For the reasons indicated, the judgment will be reversed and the cause remanded for a new trial.

*Judgment reversed.*

CULBERT and RICHARDS, JJ., concur.

---

KOSIENSKI *v.* THE STATE OF OHIO.

*Criminal law—Evidence—Accused's statements constitute confession of guilt as distinguished from admissions, when— Preliminary proof that confession voluntary unnecessary, when—Testimony elicited on cross-examination not collateral evidence, precluding attack—Defendant making state's witness his own not precluded from contradicting testimony—Prejudicial to exclude evidence explaining confession and showing duress—Defendant, unskilled in English, entitled to explain confession of guilt—Murder by attaching bomb to deceased's automobile starter—Contention of impossibility of explosion goes only to weight of evidence.*

1. Statements by defendant made to officer detailing how crime was committed *held* "confession" of guilt, as distinguished from mere admissions, and was inadmissible without preliminary proof that confession was voluntary.

2. Testimony by officer as to confession of guilt made by defendant to him, elicited on cross-examination by defendant's attorney, *held* not collateral evidence, precluding attack thereon by defendant.
3. That state witness was made defendant's witness by examination as to conversation with defendant did not preclude defendant from contradicting any fact stated by witness if defendant believed such fact was not true, though contradiction reflected on witness' credibility.
4. Where officer was permitted to testify to confession of guilt by defendant, exclusion of evidence explaining or denying statements and showing that statements were made under duress *held* reversible error.
5. Where confession of guilt by defendant, born in Poland and unskilled in use of English language, was admitted in evidence, defendant should have been permitted to explain or qualify statements.
6. In prosecution for murder alleged to have been accomplished by attaching bomb to deceased's automobile, which would explode by stepping on starter button, contention that it was utterly impossible to have effected such an explosion under physical conditions and in manner described in confession goes only to weight of evidence and does not justify interference with verdict on such ground.

(Decided January 17, 1927.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Victor Conrad, Mr. Henry Du Lawrence,* and *Mr. D. F. Anderson,* for plaintiff in error.

*Mr. E. C. Stanton* and *Mr. M. J. Meyer,* for defendant in error.

MIDDLETON, J. Plaintiff in error, who will be referred to herein as the defendant, was convicted in the court of common pleas of this county of the crime of murder in the first degree. The jury trying the case recommended mercy, and thereupon he

was sentenced to be confined in the Ohio state penitentiary for and during the remaining term of his natural life.

He contends in this proceeding that error intervened to his prejudice in the trial of the case.

The claim of the state was that the defendant, who lived in the home of the man he was alleged to have killed, was in love with the latter's wife, and that in order to remove all obstacles to the consummation of his affection he determined to kill the husband, whose name was Stanley Lewandowski. It was charged by the state that the defendant, to accomplish this purpose, attached a bomb to an automobile owned and used by Lewandowski, and that he so constructed and attached it to said machine that when any person stepped upon the starter button it would explode.

It was shown that on the morning of April 20, 1925, Lewandowski, in attempting to start his machine, exploded said bomb; or, at least, that an explosion resulted from his attempt to start said machine, from which he received injuries which in a few moments caused his death.

The record discloses that the instant proceeding was the third trial of the case.

The principal claims of error made here go to the exclusion of testimony by the trial court. The record shows that among the witnesses offered by the state was a police officer named Funk, who was connected with the detective department of that service. This officer was assigned to the case in the beginning and had a prominent part in developing the evidence against the defendant. The fol-

lowing questions and answers are part of his cross-examination by counsel for the defendant:

"Q. Did you have any conversation with him with reference to the manner or cause of death of Stanley Lewandowski? A. Yes, sir.

"Q. Over at the house? A. No, sir.

"Q. Where? A. At the police station.

"Q. After you came from the Lewandowski home, after you had found these things, or before? A. I talked to him a little bit before I went out there, and then after I came back with this pipe and the wire, I had another conversation with him.

"Q. What did he say to you? A. Do you want to know everything that he said to me?

"Q. Well, yes; that you can remember? A. I asked him what he knew about Stanley Lewandowski's death—

"Q. Pardon me, just where was that? A. At the detective bureau—and he says, 'I will tell you all about it.' "

The witness then proceeded to give in evidence a confession of the defendant, complete in every detail, and conforming to the facts as claimed by the state, which have heretofore been stated.

Counsel for the state, in argument, seemed disposed to treat the alleged statements as attributed to the defendant by his witness as mere admissions of guilt, but such statements go much farther than that, and are in fact, a complete confession of guilt, as distinguished from mere admissions. As a confession of guilt, the testimony of this witness was not admissible under the rule which requires preliminary proof that such confession was voluntary. But no objection thereto was made by

either the state or the defendant, and the court apparently was satisfied to permit the evidence to go to the jury without any inquiry into its competency.

It seems to have been the position of the court, and it is now so argued by the state, that the defendant by the cross-examination referred to made the officer his own witness in the introduction of said confession, and was therefore bound by all that the witness said in respect thereto. And, further, it is argued that this evidence was collateral, and therefore the defendant was precluded from any cross-examination of the witness and from offering any evidence whatsoever, either to contradict the statements of the witness or to test in any manner the probative value of the alleged confession. It may be conceded that counsel for the defendant made the officer his witness when he asked for the conversation, but the evidence which followed was not by any means collateral. It was direct, positive, and probably was considered by the jury as conclusive proof of the defendant's guilt.

The fact that the witness under such examination was made the defendant's witness did not, and, under the rule recognized generally by all courts, could not, preclude the defendant from contradicting any fact then stated by the witness, if the defendant believed such fact was not true, even if such contradiction reflected on the credibility of the witness.

The authorities in support of this rule are so unanimous that citations in respect thereto are unnecessary.

1 Greenleaf on Evidence (16th Ed.) says in Section 443b:

"It is exceedingly clear that the party calling a witness is not precluded from proving the truth of any particular fact by any other competent testimony, in direct contradiction to what such witness may have testified.  *   *   *  [If this were not so, a party would be (as courts have more than once pointed out) virtually at the mercy of his first witness.]"

In Encyclopedia of Evidence, Volume 3, page 530, it is said:

"Although it is a general rule that a party cannot take inconsistent positions, yet he may introduce evidence that contradicts other evidence adduced by him."

In an English case reported in *Alexander* v. *Gibson*, 2 Camp., 555, 170 Eng. R. Rep., 1250, Lord Ellenborough, in referring to this question, said:

"I know of no rule of law by which the truth is on such an occasion to be shut out, and justice is to be perverted."

When the officer had finished his testimony in respect to the conversation and confession aforesaid, counsel for the defendant thereupon attempted to show by further questions directed to this witness the circumstances and conditions surrounding the defendant when said conversation was had. Objection was made to every attempt of this kind, and such objection was sustained by the court. For instance, defendant's counsel inquired of this witness (record, page 86), as follows, referring to the conversation:

"Q. All the time, or, if not all the time, con-

tinuously at intervals during the course of this conversation, these remarks were accompanied by blows either from you or from kicks of yours and the other officers who were present?

"Mr. Stanton:  I object.

"The Court:  What is the purpose of that?"

(Court and counsel confer privately out of the hearing of the jury.)

The objection was then sustained by the court, to which ruling of the court counsel for defendant then and there duly excepted.

Thereupon counsel for the defendant dictated for the record the following:

"The defendant expects to prove by the answer to the question that at and during the time of the conversation testified to as aforesaid by Detective Funk it was accompanied by violent and brutal blows and kicks by the witness, as well as by the other police officers who were present, upon the person of the defendant, and that if he did make the statements heretofore attributed to him by the witness, such statements were made under duress and involuntary and inadmissible as evidence."

Again, the same witness was inquired of as follows:

"Q. The fact is, isn't it, Officer, that at the time that you say that he made the statements, that in conjunction with the other officers you would say to the defendant, 'You connected this wire with that piece, didn't you?'

"Mr. Parsons:  I object.

"Q. And that he would say 'Yes?' "

The court thereupon sustained the objection,

whereupon counsel for the defendant said to the court:

"Without taking up any further time, it is your honor's ruling that we cannot introduce anything that was stated by any of the police officers at the time of this conversation in the defendant's presence?

"The Court: Wouldn't it be hearsay? Well, the objection is sustained."

The defendant himself, when he testified was also denied the right to explain or qualify in any manner his alleged conversation or confession with and to Officer Funk and others.

At page 264 of the record the defendant himself was inquired of in respect to what was done while he was being taken to the police station. Objection was made to the interrogatory, which was sustained, and thereupon counsel for the defendant again dictated for the record as follows:

"We further expect the testimony of the witness to show that after the other police officers who took defendant to Spafford Road got out of the machine and went into Lewandowski's house, and in a few minutes returned and got into the machine and that they drove to the Central Police Station, and in the course of the journey brutally, unjustly, and violently beat and struck the defendant, and with menacing threats of greater violence endeavored to induce defendant to admit that he had killed Stanley Lewandowski; that the same treatment, but in a more violent degree was administered to defendant after they arrived at the detective headquarters, at the police station, during a period of 25 or 30 hours, at the expiration of which through

fear of even greater violence in the event of his refusal so to do, defendant involuntarily subscribed to a written instrument which had been prepared by the police officers, and which contained an admission that the defendant had killed Stanley Lewandowski, and a description of the manner in which the homicide was committed.''

Then followed this interrogatory:

''Q. Now, you heard Officer Funk testify yesterday, I think it was?   A. Yes, sir; what man, this man (indicating Officer Funk); yes, sir.

''Q. Did you tell Officer Funk that you were in love with Mrs. Lewandowski?

''Mr. Parsons:  I object.

''The Court:  Yes; that's one of the same questions.  Objection sustained.''

Of course, the record does not show what the answer of the witness would have been to this interrogatory.  Other questions of a similar character were propounded both to the officer and the defendant, which it is unnecessary to refer to in detail.

It is our opinion that the defendant, by the exclusion of the foregoing evidence and other evidence of like character, was improperly deprived of the right to explain, qualify, or deny any of the statements attributed to him by Officer Funk in the latter's testimony, and to show any of his surroundings at the time such statements were alleged to have been made.

It is said in *Burton* v. *State,* 107 Ala., 108, 18 So., 284, and quoted with approval in 2 Chamberlayne on Evidence, in Section 1589, and substantially adopted in *Edinger* v. *State,* 12 Ohio App., 362,

364, in reference to the value of confessions as proof of guilt, that:

"Having been declared competent and admissible, they are before the jury for consideration. The jury have no authority to reject them as incompetent. But the jury are the sole judges of the truth and weight to be given confessions, as they are of any other fact. In weighing the confessions, the jury must take into consideration all the circumstances surrounding them, and under which they were made, including those under which the court declared as matter of law they were voluntary. In weighing confessions, the jury necessarily consider those facts upon which their admissibility, as having been voluntarily made, depends. While there is no power in the jury to reject the confessions as being incompetent, there is no power in the court to control the jury in the weight to be given to facts. The jury may, therefore, in the exercise of their authority and within their province, determine that the confessions are untrue, or not entitled to any weight, upon the grounds that they were not voluntarily made. The court passes upon the facts merely for the purpose of determining their competency and admissibility. The jury pass upon the same facts, * * * in determining whether the confessions are true and entitled to any and how much weight. The court and jury each have a well-defined and separate province."

In the instant case, the jury by the exclusion of the evidence aforesaid, were wholly deprived of their right to consider the circumstances which surrounded the making of said alleged confession, and all other circumstances which might in any manner

reflect upon the weight to be given to such confession.

It is intimated that the primary purpose of counsel for defendant in bringing out said alleged confession was to get before the jury the defendant's story of what had occurred prior to the time such confession was made, in order to excite the sympathy of the jury in his behalf. The record shows, as before observed, that there had been two former trials of the case, and in the instant trial the state had not then offered, and evidently did not intend to offer, the defendant's confession. As we regard it, the action of counsel for the defendant in bringing out this testimony was wholly indefensible from any point of view, and if done for the purpose referred to deserves severe censure.

We have no sympathy with the methods too often adopted by criminal lawyers, by which the good faith and integrity of police officers are attacked, and in the instant case we are not at all impressed with the claims of the defendant as to his alleged treatment by officers in the service of the city of Cleveland, but these matters are foreign to the question before us. It is our province to see that the defendant was fairly and legally tried under the established rules of law. It is our conviction that the court in the instant case, on its own motion, might well have excluded the testimony of Officer Funk in respect to the statements of the defendant, but, having allowed such statements to go to the jury, the defendant was then certainly entitled to rebut their probative force by any evidence that would reflect thereon, and we must conclude that when defendant was denied this right he was de-

prived of a substantial legal right for which the judgment must be reversed.

In this connection, also, it may be observed that the record shows that the defendant was born in Poland, and was so unskilled in the use of the English language that at times his testimony was taken through the assistance of the interpreter. This fact added another reason for permitting evidence to explain or qualify his statements to the officers.

The remaining complaints are overruled.

It is contended that it was utterly impossible to have effected an explosion such as claimed under the physical conditions and in the manner described in said confession. This contention goes only to the weight of the evidence on that phase of the case alone, and is not sufficient to justify any interference with the verdict on that ground.

For the reason heretofore stated, the judgment is reversed and the case is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

MAUCK, P. J., and SAYRE, J., concur.

Judges of the Fourth Appellate District, sitting in place of Judges SULLIVAN, VICKERY and LEVINE of the Eighth Appellate District.