DUARD STAGEMEYER v. STATE OF NEBRASKA.

273 N. W. 824

FILED JUNE 18, 1937. No. 29953.

*Perry, Van Pelt & Marti, J. F. Fults* and *J. P. O'Gara,* for plaintiff in error.

*Richard C. Hunter, Attorney General,* and *Edwin Vail, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

EBERLY, J.

The defendant, who is plaintiff in error here, was found guilty of the charge that he, in conjunction with Fred Stombaugh and Vick Hargis, in Furnas county, Nebraska, on February 2, 1935, did wilfully, maliciously and forcibly break and enter into a store building owned by the Farmers Co-operative Oil Company, a corporation, with intent to steal goods and chattels of value of the said corporation, then in said store building, and did unlawfully steal and carry away property of the value of $70 without consent of the owner thereof. The defendant was tried separately by the district court. At the conclusion of the trial, the jury returned a verdict finding him guilty as charged. From the order of the trial court overruling his motion for a new trial, defendant prosecutes error.

The evidence in the record discloses that the Farmers Co-operative Filling Station in Holbrook, Furnas county, Nebraska, was, on the night of February 2, 1935, feloniously entered by burglars, and about $70 in cash stolen therefrom. The sole evidence connecting the defendant therewith consists of certain confessions, which included a confession purporting to have been made by William E. Brown, and on April 3, 1936, reduced to writing by the county attorney of Furnas county, and signed by Brown, identified in the record as exhibit 2; a confession purporting to have been made by Fred Stombaugh, and on April 4, 1936, reduced to writing by the county attorney of Furnas county, and signed by Stombaugh, identified in the record as exhibit

3; and also a confession purporting to have been made by the defendant, and on April 4, 1936, reduced to writing by the county attorney of Furnas county, and signed by defendant Stagemeyer, identified in the record as exhibit 4. Defendant made due objection to the introduction of all evidence on the subject of confessions as each item was offered, and, further, excepted to the ruling of the district court admitting the same in evidence, "without the defendant having an opportunity to show the fact that these (confessions) were obtained by threats and by promises, and after the defendant had been told they would give him the 'third degree' the same as they had Stombaugh; and after he had been struck by one of the officers in whose custody he was; this, the defendant objects to and insists upon his constitutional rights to present his evidence before they (the three written confessions) are received in evidence." This exception and request was denied by the trial court, and the prosecuting attorney was directed to "proceed," and he thereupon read to the jury exhibits 2, 3, and 4.

In this discussion, for convenience, the officers engaged in this transaction, though their names appear in the bill of exceptions, will be referred to as the sheriff, the deputy sheriff, the deputy state sheriff, the railroad detective, and the county attorney.

The evidence offered by the state prior to the rulings of the trial court admitting the confessions in evidence is, in substance, that in the afternoon of April 3, 1936, the deputy state sheriff and a railroad detective were in Beaver City. William E. Brown had been arrested, and that afternoon a typewritten confession embracing twenty-one questions and answers was signed by him, which is witnessed by the county attorney, the deputy state sheriff, and the railroad detective. From the state's evidence alone we glean that no complaint as to defendant was then filed, and no warrant was issued for his arrest, but the county attorney orally directed the sheriff to arrest the defendant and four others. This direction was immediately complied

with. The sheriff and his deputy proceeded to Holbrook. The defendant was there arrested at his home, and, late in the afternoon of the same day, with the others, was placed in the county jail at Beaver City. The sheriff then called up the railroad detective at McCook by telephone, advised him of the arrest, and soon thereafter the deputy state sheriff called up the sheriff by telephone from McCook and advised that officer that he and the railroad detective were coming to Beaver City immediately. These two officers arrived at Beaver City about 12:30 a. m. on April 4, 1936. The sheriff and his deputy awaited their arrival at his office, which the record indicates is in the building where the county jail is situated. The testimony of the officers is that on their arrival the sheriff went out and brought back the county attorney, and while the sheriff was away his deputy brought Stombaugh alone from the jail into the sheriff's office. The evidence of the officers is that when the county attorney arrived Stombaugh was permitted to read Brown's confession (exhibit 2), and, without any solicitation, threats, or inducement, he at once agreed to confess; that the county attorney thereupon typed a statement which Stombaugh then freely and voluntarily signed, wholly uninfluenced by threats, violence, or inducements of any kind. This statement is exhibit 3 and contains 159 words. Thereafter, the preliminary proof of the state is that Duard Stagemeyer, defendant, was brought into the office, and these officers swear that Brown's confession (exhibit 2) was given to him to read, followed by the production of the Stombaugh confession (exhibit 3) for his inspection, and he (defendant) in turn, without any protestation of innocence, immediately admitted his guilt and announced his willingness to execute a like confession. The county attorney thereupon propounded a few questions to him, and then typed the same, which, as exhibit 4, the officers present swear was immediately, freely and voluntarily signed by defendant. The sheriff testifies that neither at the time of his arrest at his home on April 3, nor during his journey to the county jail, nor previous to his being

brought to the office, had Stagemeyer been informed of the charges pending against him. All officers present testify that his act in signing the confession was perfectly voluntary; that no threats were made or directed against him; that no violence was applied to his person; that no promises of any kind were made to him; and that it was done by him freely and without protest. Defendant's confession is a typewritten document, containing 231 words, which occupies less than a page of the bill of exceptions. It admits participation in the burglary charged in the information filed herein, and also participation in the commission of four. additional burglaries occurring in January, 1936.

Upon the completion of the introduction of this evidence, the state rested, and the defendant was permitted, for the first time, to present his proof. The testimony on part of the defense is not only contradictory of, but wholly irreconcilable with, the evidence of the state. The defendant swears that, about five or six hours after his arrest and incarceration in the Furnas county jail, he was taken from the jail and conducted to the sheriff's office by the deputy sheriff, who was with the sheriff when he was arrested at his home. This occurred between 1 and 2 o'clock in the early morning. When he arrived at the sheriff's office, in addition to himself and his conductor, there were then present the sheriff, the deputy state sheriff, the railroad detective, the county attorney, and Fred Stombaugh. All were standing up except Stombaugh, who was seated in a chair. Defendant described Stombaugh's condition as he then observed it, in the following words: "His mouth was bleeding; his nose was bleeding; it looked like he had been crying; his eyes were blood-shot;" and there was blood "down on the front of his shirt." Defendant was transported with Stombaugh in the automobile when the party was brought to the jail a few hours before, and knew his condition when he was taken to the sheriff's office about 1 o'clock a. m., and when Stombaugh left the jail only a few moments before, and knew that at these times Stombaugh's nose and lip were not bleeding, and he had no blood

·on his shirt. The first thing that was said to defendant after he entered the office was by the railroad detective, who pointed to a chair and told him to sit down. Bill Brown's statement was then brought up and the railroad detective said to defendant, "Are you guilty of that?" The defendant answered, "No." The detective repeated the question, "Are you sure you ain't guilty of that?" The defendant repeated his answer, "No." Then the detective said, "You know you are; you just as well plead guilty; it will be easier." And defendant further testifies that the detective then told him, if he did not plead guilty, "They'd give me the 'third degree.'" At this time the county attorney spoke up, saying to the defendant that he had just as well plead guilty, it would be easier on him. The defendant then replied to the county attorney's statement, "I wasn't guilty." Thereupon the county attorney said, "Just as well give him the 'third degree.'" The detective then directed defendant to get around the table and occupy the chair where Stombaugh was sitting. (At this point Stombaugh was removed from the office and taken back to the jail.) The defendant's narrative continues, viz.: The county attorney told defendant that they had beaten Freddy Stombaugh up and "They'd do the same to me if I didn't plead guilty to them confessions." Further, that all present except defendant were armed with pistols, which were displayed while they were seeking to compel the making of a confession by the defendant. When they had defendant read Bill Brown's statement, defendant told the officers that he "wasn't guilty of it." And when Freddy Stombaugh's statement was shown defendant, he again protested he was not guilty. The railroad detective told defendant three or four times they would beat him until he did sign the proposed confession. Finally, the railroad detective hit the defendant a number of times under the arms in the short ribs. The county attorney said "They would make it easier on me if I'd sign it (the confession);" that "They'd see I got out quick if I signed it and plead guilty;" that "They'd make arrangements about that and

fix this parole." After this had happened, according to the defense, the written confession was typed and signed by defendant, who testifies, with reference thereto, "I would have signed anything to keep them from threatening me and beating me."

The following constitutes further testimony of the defendant:

"Q. Would you have signed the statement if it had not been for these threats and promises that I have called your attention to? A. No. Q. In this statement are these words: 'I have read the foregoing statement and the same is true in every respect and is freely and voluntarily given without any threat or promise.' Was that statement, or any part of it, true? A. No. Q. Had promises been made to you? A. Yes. Q. Were those statements, or any of those statements, true, above that clause? A. No. Q. Had you been guilty of any of those offenses? A. No."

The following is the sole cross-examination on this subject: "Q. And this is your signature on exhibit No. 4? A. Yes. Q. And you signed that? A. Yes. Q. And you now wish to state to the jury—you answered to Judge Perry's question, that there wasn't any of this true? A. I said it wasn't. Q. You said there wasn't any of this true? A. Yes. Q. That you didn't have anything to do with any of these things that are contained in that statement you signed? A. No. Q. Not a thing? A. No."

At a time which does not clearly appear in the record, the defendant asked the sheriff to see an attorney. The trial court, it is thought, mistakenly excluded the most, if not all, of the evidence sought to be elicited on this subject. However, the following is a part of the bill of exceptions: "Q. What attorney did you ask to see? A. John Fults. Q. When was the first time you saw John Fults? A. Tuesday afternoon."

According to the bill of exceptions, the record discloses that this trial was commenced on Wednesday, May 27, 1936. Reading the words "Tuesday afternoon" in connection with the context, the conclusion is that the defendant

was kept in the county jail of Furnas county from April 3, 1936, to May 26, 1936, without benefit of counsel, and without being permitted to see an attorney.

It would unduly extend this opinion to abstract the evidence of all the witnesses who testified on behalf of the defendant. It may be said, however, that Fred Stombaugh, who on the night of April 3/4, 1936, was taken from the jail to the sheriff's office immediately preceding the defendant, and whose signed "confession" was made that night purporting to implicate defendant in conjunction with Stombaugh in the commission of the burglary charged, in open court testified repudiating his alleged confession, stating that it was untrue; that he had not done the things mentioned therein; that it was obtained by the railroad detective beating him up that night in the sheriff's office, and threatening to continue the beating until he made the confession; that this beating caused his physical appearance testified to by defendant as viewed by him on his entrance into the sheriff's office. As an additional ground of his fear for his physical safety at the time his signature to this confession was obtained, the following question was propounded by defendant's attorney: "Q. You have testified, Fred, that you were in fear of Carter (the deputy sheriff) because of the beating he gave you before; now, I ask you to tell the extent of that beating—how he beat you?" Objection thereto on behalf of the state was thereupon sustained, and the following offer of proof was made: "Offer to prove by the witness on the stand that about six weeks before April 3, 1936, in the sheriff's office in the courthouse in Beaver City, Nebraska, when the county attorney was present, the deputy, Carter, was present, Berg, the railroad detective, was present, that the deputy, Carter, slugged him in the face, loosened four of his teeth, broke the bridge of his nose, caused him to vomit, caused him to have nervous indigestion for at least three or four weeks from which he hadn't fully recovered on April 3, 1936; and that Carter, when he approached him in a threatening manner, that witness has just testified, said he'd repeat

what he had given to him on the other occasion if he didn't tell the truth." This offer of proof the trial court denied.

As to the result of the beating that occurred in the early morning of April 4 in the office of the sheriff, in the presence of those already mentioned, Stombaugh testified: "Q. You remember that Duard Stagemeyer was brought into the sheriff's office there before you left? A. Yes. Q. What, if you know, was the condition of your face, your lips, your nose and your shirt at that time? A. My lips at that time was cut and bleeding; there was a knot on the side of my head when Mr. Stagemeyer came in. Q. How many of your teeth were loose at that time? A. All of them along the front side. Q. Who had hit you and knocked your teeth loose? A. Matt Berg. Q. How many times had Matt Berg hit you in the mouth? A. Twelve or fifteen times. Q. How many times did he hit you in the ribs? A. Oh, twelve or fifteen times altogether. Q. What, if you know, was your physical condition at the time Stagemeyer was brought into the room where you were? A. Well, I was weak from being pounded."

The fact that Fred Stombaugh was beaten up while in the sheriff's office, just before the defendant was brought in, is corroborated by Glenn Massey, Harold Dodd, and Dean Hargis. They saw Stombaugh's appearance when he was taken to the office; they also saw him when he got back, all beaten up. They heard noises emanating from the sheriff's office where Stombaugh was detained, while he was gone; they talked to him when he returned and knew his then condition.

It fairly appears that the business of securing these two confessions, one of 159 words, the other of but 231 words, occupied more than three hours in time.

We have long been committed to the view that, "In a criminal trial a confession of guilt alleged to have been made by the defendant is not competent in evidence, unless first shown to have been voluntarily made," and also, that "An involuntary statement or confession is not competent against the defendant for any purpose." *Jones v. State,* 97 Neb. 151, 149 N. W. 327.

So, also, "A statement of facts claimed by the prosecution to be equivalent to a confession of guilt will not be considered unless it is first shown to have been voluntarily made and without inducement." *Cheney v. State,* 101 Neb. 461, 163 N. W. 804. See, also, *Morcumb v. State,* 125 Neb. 42, 248 N. W. 807.

In the instant case the record is not one where the trial court, on a proper foundation being laid, admits proof of a confession made by the accused which is subsequently challenged by the defendant, but rather one where the accused makes a timely application, before the proof of the purported confession is admitted and read or stated to the jury, for permission to controvert the evidence or testimony constituting the foundation upon which the state predicates its offer of proof. This question was before this court in the case of *Tramp v. State,* 104 Neb. 222, 176 N. W. 543. In that case the trial court, as in the instant case, overruled the objection of the accused and his offer of proof tending to establish the involuntary character of the confession thus offered in evidence. Under the facts in the *Tramp* case, we held: "It was an abuse of discretion for the trial court to allow the jury to receive this evidence without first giving the defendant opportunity to prove under what conditions and circumstances the statement was obtained. It was the duty of the trial judge to pass upon the sufficiency of the foundation. The only theory on which such a statement is permissible of being introduced is where given voluntarily, without fear of punishment, or hope of reward, and free from violence and any possible bodily harm." The controlling principle of practice involved in *Tramp v. State, supra,* finds ample support in the authorities, and has never been expressly repudiated in this jurisdiction.

In 2 Wigmore, Evidence (2d ed.) pp. 216-219, it is stated: "The admissibility of the confession, as affected by the foregoing rules, is a *question for the judge,* on elementary principles defining the functions of judge and jury. * * * In determining admissibility: (1) The *judge must*

*hear the defendant's evidence* (including evidence from cross-examination of the prosecution's witnesses) upon the issue of voluntariness."

On this question of trial practice, Underhill, Criminal Evidence (4th ed.) pp. 557-559, says, in part: "After the prosecution has introduced preliminary evidence as to the voluntary character of the confession the accused may, before the confession is received in evidence or read or stated to the jury, introduce evidence to show that the confession is involuntary, and for this purpose may show all of the circumstances under which the confession was made. In this respect defendant may cross-examine the witnesses who testified for the prosecution, defendant may take the stand and testify as a witness for himself, and defendant may call other witnesses to testify on this question. The prosecution may introduce evidence to rebut defendant's evidence as to voluntary character of confession. If the jury was not present when the evidence as to voluntary character was received, the defendant may, after the confession is received, introduce evidence as to voluntary character of confession as bearing upon the weight and credibility of the confession."

It will be noted that the rule as stated is quite consistent with the underlying principle upon which *Tramp v. State, supra,* is based, and that, in support of the rule announced as to defendant's right of cross-examination, *Willis v. State,* 43 Neb. 102, 61 N. W. 254, is cited. See, also, *Burns v. State,* 226 Ala. 117, 145 So. 436; *Lockett v. State,* 218 Ala. 40, 117 So. 457; *Hardin v. State,* 66 Ark. 53, 48 S. W. 904; *People v. Fowler,* 178 Cal. 657, 174 Pac. 892; *People v. Reed,* 68 Cal. App. 19, 228 Pac. 361; *People v. Eli,* 131 Cal. App. 482, 21 Pac. (2d) 654; *People v. Klyczek,* 307 Ill. 150, 138 N. E. 275; *People v. Sweeney,* 304 Ill. 502, 136 N. E. 687; *Zuckerman v. People,* 213 Ill. 114, 72 N. E. 741; *Commonwealth v. Jokinen,* 257 Mass. 429, 154 N. E. 189; *State v. Condit,* 307 Mo. 393, 270 S. W. 286; *State v. Behiter,* 55 Nev. 236, 29 Pac. (2d) 1000; *State v. Ascarate,* 21 N. M. 191, 153 Pac. 1036; *People v. Rogers,* 192 N. Y.

331, 85 N. E. 135; *Kosienski v. State,* 24 Ohio App. 225, 157 N. E. 301; *Berry v. State,* 4 Okla. Cr. 202, 111 Pac. 676.

When a confession is offered by the state in a criminal case, it is within the right of counsel for the prisoner, before it is admitted, to cross-examine the witnesses who propose to testify to it as to the circumstances surrounding the making of it, and the defense may also call at the same time independent witnesses and examine them, going thoroughly into the whole matter, as to how the confession came to be made, the parties present, the physical condition and state of mind of the prisoner at the time it was made, and then the court, with all these facts before it, is to pass upon its admission. *State v. Hill,* 65 N. J. Law, 626, 47 Atl. 814.

In this connection the question also arises as to what consideration should be given to the failure or refusal or delay of the officers of Furnas county to accord the defendant his right to assistance of counsel until the day previous to the commencement of his present trial. Owing to the undue restriction exercised by the trial court in the admission of evidence on this subject, the record before us may not completely reflect the facts, and proper explanations by the authorities may yet be made. But, on the basis of what we have, without thought of what may be supplied in the future, the inference supported by the present record is that, from April 4, 1936, to May 26, 1936, fifty-one days, it was impossible for the defendant to secure the assistance of counsel. The effect of the lapse of such an interval of time would in due course of nature tend to remove all trace of violence applied to defendant, or to Stombaugh, if such violence had actually been applied. On the other hand, had counsel been employed by the defense in this case immediately, the result of a prompt physical examination of these parties (including their clothing), made by competent persons, would have in effect preserved evidence of a situation which on the determination of the question of the voluntariness of the confessions would probably have been controlling.

Sections 7, 11, and 12, art. I of our Constitution, provide for and define the rights of the accused in all criminal prosecutions. Without an extended discussion of these paragraphs, it may be said that the right of the accused to counsel and due preparation for his trial cannot be gainsaid.

In *Kleinschmidt v. State*, 116 Neb. 577, 218 N. W. 384, this court approved the following: "In speaking of the federal Constitution Justice Day, in *Weeks v. United States*, 232 U. S. 383, 392, says: 'This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws.' And in speaking of the tendency to execute the criminal laws by violating the Constitution in order to 'obtain conviction,' says that such 'should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.' "

Obviously, the accused in this case, in the event of a second trial thereof, should be accorded the right of showing the exact method followed by the authorities in his incarceration in the county jail of Furnas county during the fifty-one day period referred to. The extent to which his right to consult counsel during that period was delayed or denied, if at all, is certainly proper to be shown. And, if it appear that during said period he has been, in effect, unlawfully held incommunicado by those in whose custody he was, and as a necessary result important evidence has been practically suppressed, this fact will merit due and careful consideration in connection with all other surrounding circumstances in the determination of the competency of the confessions offered in evidence in this case.

A careful examination of all the proof adduced by the state at this trial is convincing that it contains not a scintilla of evidence that tends to connect the defendant with the crime charged, save and except the "confessions"

of Brown, Stombaugh, and the defendant, the written statements of which were prepared by the county attorney and subscribed by the parties named, and received in evidence as exhibits 2, 3, and 4. It is equally evident that, unaided by the "confessions," the proof is wholly insufficient to sustain the conviction. Also, it affirmatively appears that all of the persons so confessing appeared at the trial as sworn witnesses, and each repudiated his confession, and denied the truth of the statements therein contained. In addition, the defendant voluntarily took the witness-stand and clearly and unequivocally testified, not only as to his innocence of the crime charged, but to facts which, if accepted as the truth, fairly establish that the confessions introduced in evidence, as having been made by himself and by Stombaugh, were obtained as a result of the use of the "third degree" being applied to those from whom such confessions were obtained. His cross-examination by the representative of the state in no degree discredited the statements so made by him. Under these circumstances, every fact tending to throw any light upon the truth or falsity of the confessions should have been received for the preliminary consideration of the trial judge, and also for submission to the trial jury. *Shellenberger v. State,* 97 Neb. 498, 150 N. W. 643.

All courts are in agreement that the use of the "third degree" applied by police officers to persons in their custody can never be tolerated, and that confessions obtained thereby are necessarily invalidated because of the nature of the means employed to obtain them.

It appears that when an attempt is made to introduce in evidence a confession purporting to have been made by the defendant in a criminal case, and this issue of the use of the "third degree" is clearly raised, the consensus of opinion of the courts that have passed upon the matter uniformly sustains the conclusion that, not only should all the surrounding facts and circumstances be fully investigated, but that the defendant may produce, as bearing upon the voluntariness of the confession, evidence of phy-

sicians and others as to the condition of his body immediately after the alleged confession, *as well as the statements of himself,* which have a bearing on the circumstances under which the alleged confession was made. *People v. Alex,* 260 N. Y. 425, 183 N. E. 906; *State v. Nagle,* 326 Mo. 661, 32 S. W. (2d) 596; *People v. Weiner,* 248 N. Y. 118, 161 N. E. 441; *People v. Barbato,* 254 N. Y. 170, 172 N. E. 458; *Garrett v. State,* 52 Tex. Cr. Rep. 255, 106 S. W. 389. See, also, *Ridenour v. Lewis,* 121 Neb. 823, 238 N. W. 745.

In the instant case, it is thought that the trial court erred in excluding statements of witness Stombaugh, made by him immediately on his return to the jail in the early morning of April 4, 1936, and while engaged in removing blood from his face, as to the cause of his injuries and the treatment that had just been accorded him.

In *People v. Alex, supra,* the highest court of review of the state of New York reversed a conviction where the trial court refused to receive in evidence, under the circumstances detailed in the opinion, statements of the prisoner, made 36 hours after the confession had been signed, as to treatment received by him causing him to sign the same, accompanied by an offer to show the marks thereof appearing on his body.

In connection with this *Alex* case, the rule was also announced: "An error which prevents proper consideration by the jury of the only question relied upon by the defendant is substantial, not technical, and we have no right to disregard it though we may approve of the verdict."

In the instant case, however, this court expresses no opinion as to the merits of the defense, or as to the guilt of the party being tried.

The last question presented by this record, necessary for consideration, is as to the admissibility of exhibits 2, 3, and 4, considered as entireties. Each instrument is complete within itself. There is no express reference contained in any one to the others. Exhibits 2 and 3 are subscribed respectively by William E. Brown and Fred Stombaugh only. The narration of facts contained in each of these

statements was not given under the sanction of an oath, nor detailed by the maker thereof in open court before the jury in the presence of the defendant. Not only was this defendant deprived of confrontation, but, in effect, he was denied his right of cross-examination. Exhibit 3 does not carry any evidential force because made by one jointly charged with the defendant with the commission of a burglary on February 2, 1935. Both exhibits 2 and 3 purport to have been subscribed in April, 1936. They relate to a criminal transaction which at the time the statements were made had been fully completed in the past. The contents of the statements necessarily negative the inference that, when made, they were in furtherance of a common criminal purpose then in progress.

"Wherever the writings or words of such party (charged jointly with the commission of a criminal offense) amount to an admission merely of his own guilt, and cannot be deemed acts done in furtherance of the common design, they can be received in evidence only against the party making or uttering them." *Zediker v. State,* 114 Neb. 292, 207 N. W. 168. See, also, *Nebraska State Bank v. Citizens State Bank,* 122 Neb. 522, 240 N. W. 575; *Priest v. State,* 10 Neb. 393, 6 N. W. 468.

Therefore, these statements, both made by the subscribers thereof in the absence of the defendant, have no evidential force against him, save that which by his own words or acts he voluntarily gives them. Uncoerced, he must have admitted the truth of each of them, and in fact have made them his own. *Grammer v. State,* 103 Neb. 325, 172 N. W. 41. This must have been accomplished in harmony with the principles laid down by this court in *O'Hearn v. State,* 79 Neb. 513, 113 N. W. 130. These statements may only be received in evidence subject to identical limitations as to competency imposed by law on defendant's own confession, and should be wholly disregarded if the triers of fact, from a consideration of all the evidence, fail to find that they were voluntarily made by the defendant or voluntarily assented to or adopted by him. *Ringer v. State,* 114 Neb. 404, 207 N. W. 928.

But, an examination of exhibits 2 and 4 discloses that they were inadmissible in evidence as entireties for additional reasons.

Exhibit 2 is made up of 21 questions and answers thereto, all admittedly propounded to one William E. Brown, answered by him, and reduced to writing in the absence of the defendant, wholly without defendant's knowledge, and at a time when and place where he was not represented. The first question and answer in exhibit 2 establishes the burglary by Brown of the J. C. Henry Hardware Store on the night of March 31, 1936. The defendant was not in any manner connected with this crime. In interrogatories 2 to 19 and answers thereto, Brown states that there had been a number of other burglaries and thefts in Holbrook during the past two years; recalls that the lumber yard, the depot, and elevator in Holbrook were broken into in the fore part of January, 1936, and, in addition, the Conoco Filling Station was broken into. The methods employed in committing the crimes are described, and the property stolen is listed. Brown states that he was asociated with Vick Hargis and the defendant Stagemeyer in the commission of each of these crimes so described by him. In the nineteenth question and answer Brown says Dean Hargis told him that he, Dean Hargis, and Massey stole the Denman car on January 12, 1936. The defendant is not charged with participating in this crime.

Questions 20 and 21 and answers thereto of exhibit 2 are as follows: "Q. Do you know who robbed the Farmers Co-Op Filling Station in February, 1935? A. Fred Stombaugh, Vick Hargis and Duard Stagemeyer, all told me that they did the job and that they got seventy some dollars out of the station. Q. What if any other crimes do you recall having taken part in in Holbrook? A. Vick Hargis and myself broke into Lentz Filling Station during the first part of December and got some cigarettes, chewing gum, spark plugs, gas tank lids and tire patching."

Exhibit 4 purports to be a confession of the defendant, and signed by him, and is the document the execution of

which he claims was wholly involuntary on his part. It details particulars as to the crime charged in the information filed herein, of defendant's participation therein, and, as a separate paragraph thereof, the following appears:

"In January, 1936, Bill Brown, Vick Hargis and myself broke into the C. B. & Q. depot, the Perry Lumber Company office, the Ranking Elevator, and the Conoco Filling Station, all in Holbrook, Furnas county, Nebraska. I got a quart of oil out of the Conoco Filling Station."

Thus, it appears that in Brown's confession only question 20 and the answer thereto constitute the part that directly relates to the charge upon which defendant was convicted. The other questions and answers are separate and distinct, unconnected with, and in no manner relate to, the crime charged in the information filed in this case. The same observation is true with reference to the separate paragraph in defendant's own "confession," quoted above. But these matters do not pertain to the offense here being presented, and their admission in evidence, even though through the instrumentality of confession, is a violation of the principles announced in *Commonwealth v. Campbell,* 155 Mass. 537, 30 N. E. 72.

It is well said that where the evidence of the other crime relates to another and entirely different transaction, and in no way tends to prove the fact in issue, it is not admissible, even though it tends to prove that the defendant was bad enough to commit a robbery. *People v. Jones,* 31 Cal. 565. In this case the facts were such that the questions of particular intent or motive were not presented by the evidence. We have nothing comparable to the situations presented in *Clark v. State,* 102 Neb. 728, 169 N. W. 271, *Rice v. State,* 120 Neb. 641, 234 N. W. 566, *Knights v. State,* 58 Neb. 225, 78 N. W. 508, or *Foreman v. State,* 126 Neb. 619, 253 N. W. 898, which are cited by the attorneys for the state. In the instant case the "other crimes" occurred almost a year subsequent to the one here charged, and no connection whatever is shown.

"It is a general rule that, on the trial of one accused of

crime, proof of distinct and independent offenses, even of a similar nature, is inadmissible. To this rule there are exceptions; but, in order to make evidence of other independent offenses admissible, it must appear that the evidence offered falls within one of the recognized exceptions." *Abbott v. State,* 113 Neb. 524, 206 N. W. 153. See, also, *Fricke v. State,* 112 Neb. 767, 201 N. W. 667; *Scott v. State,* 121 Neb. 232, 236 N. W. 608; *Morgan v. State,* 56 Neb. 696, 77 N. W. 64; *Davis v. State,* 54 Neb. 177, 74 N. W. 599; *Smith v. State,* 17 Neb. 358, 22 N. W. 780; *Cowan v. State,* 22 Neb. 519, 35 N. W. 405; *Berghoff v. State,* 25 Neb. 213, 41 N. W. 136.

It is clear that the evidence as to additional independent offenses introduced in this case is not within any recognized exception. The fact that this evidence in the instant case is presented in the form of "confessions" does not alter the rule.

"The general rule is, that a statement in the nature of an admission or confession, in order to be admissible, must relate to the offense in question. While the fact that such statement may include another offense as well as that charged does not prevent the confession being received and going to the jury with proper instructions when there can be no separation of the relevant from the irrelevant parts, when the relevant parts can be separated from the irrelevant this must be done and that part, only, of the confession admitted which is material to the issues on trial." *People v. Spencer,* 264 Ill. 124, 106 N. E. 219. See, also, *Commonwealth v. Wilson,* 186 Pa. St. 1, 40 Atl. 283; 1 Greenleaf, Evidence (16th ed.) 351, sec. 218; 2 Wharton, Criminal Evidence (10th ed.) 1416, sec. 688; 1 Elliott, Evidence, 420, sec. 292; 3 Encyclopedia of Evidence, 324.

This rule precludes the reception in evidence, even though proper foundation for admission of the confessions be established by the state, of the separate paragraph of defendant's confession hereinbefore quoted, and also all of the confession purporting to be signed by William E. Brown, save and except the twentieth question and answer thereto.

For the reasons herein set forth, the district court erred. Therefore, the judgment and sentence of that court is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.